# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jason D. McConnell, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 0:23-3213-RMG |
| v. | ) | |
| | ) | |
| Martin J. O'Malley, Commissioner | ) | |
| of Social Security, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the decision of the Commissioner be affirmed. (Dkt. No. 22). Plaintiff has filed objections to the R&R and the Commissioner has filed a response. (Dkt. Nos. 23, 24). For the reasons set forth below, the decision is reversed and remanded to the agency for further proceedings consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made. The

Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "[I]t does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the claimant is engaged in substantial gainful work. If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has a "severe medically determinable physical or mental impairment." If the claimant has one or more severe impairments, the Commissioner proceeds to

Step Three, which involves a determination whether any impairment satisfies one of the designated list of impairments that would automatically render the claimant disabled. Where a claimant does not satisfy one of the listed disabling impairments, the Commissioner must proceed to Step Four, which involves a determination of the claimant's residual functional capacity (RFC). Once the RFC is determined, the Commissioner proceeds to Step Five to determine if jobs exist in significant numbers in the national economy that the claimant can perform in light of her RFC. 20 C.F.R. § 404.1520(a)(4). The claimant carries the burden of establishing the requirements of Steps One through Four, but at Step Five the burden shifts to the Commissioner. If the Commissioner fails to carry her burden at Step Five, the claimant is entitled to a finding of disability as a matter of law. *Pearson v. Colvin*, 810 F.3d 204, 209-10 (4th Cir. 2015).

## Factual Background

Plaintiff, who was formerly employed as a maintenance engineer, asserts that he has been disabled under the Social Security Act since September 1, 2018. An administrative law judge (ALJ) conducted an administrative hearing on November 18, 2022 and issued a decision on September 5, 2023. The ALJ found that Plaintiff suffered from a broad range of severe physical and mental impairments, including ischemic heart disease, congestive heart failure, valvular disease, obstructive sleep apnea, degenerative lumbar disc disease, left knee dysfunction, chronic obstructive pulmonary disease, obesity, diabetes, affective disorder, and anxiety disorder. (Dkt. No. 8-2 at 18). Despite these multiple severe physical and mental impairments, the ALJ found that Plaintiff retained the RFC to perform less than the full range of sedentary work. Due to his numerous severe impairments, the ALJ limited Plaintiff to jobs which involved only "simple,

routine tasks, involving simple work related decisions" and did not involve "a specific production rate (such as team-dependent assembly line work)." (*Id*. at 21).

In order to meet the Commissioner's burden at Step Five of the sequential process to demonstrate the existence of a significant number of jobs in the national economy which were available under the claimant's RFC, a vocational expert, Jeannie Deal, testified at the administrative hearing. (Dkt. No. 8-2 at 62-67). The vocational expert testified that under the very limited RFC, Plaintiff could not perform his previous work as a maintenance engineer. (*Id*. at 64). She then identified three alternative jobs Plaintiff could perform: "ticket counter . . . also called ticket checker" (DOT No. 219.587-010), "electronics inspector" (DOT No. 726.684-110), and "final assembler" (DOT No. 713.687-018).

Based upon the testimony of the vocational expert, the ALJ found that there existed a significant number of jobs in the national economy which Plaintiff could perform within the limitations of his RFC. (Dkt. No. 8-2 at 29-30). Once the ALJ's decision became the final decision of the Commissioner, Plaintiff filed an appeal with this Court challenging the finding that there were a significant number of jobs available in the national economy which he could perform within the limitations of his RFC. The parties have fully briefed the issues before the Court and the case is ripe for disposition.

**Analysis**

It is important at the outset to note how close the parties actually are regarding Plaintiff's capacity to sustain competitive work. The ALJ found that Plaintiff's multiple severe mental and physical impairments reduced the claimant's RFC to less than the full scope of sedentary work, the lowest level of function a claimant can have and not generally be deemed disabled under the

Social Security Act. On the other hand, Plaintiff asserts that he is disabled under the Social Security Act because he is unable to perform the jobs identified by the vocational expert. Under these circumstances, with this marginal RFC, even a relatively small error by the ALJ may tip the balance toward a finding of disability, and a reviewing Court has the obligation to closely scrutinize the record.

The Commissioner has long recognized that a "RFC less than the full range of sedentary work reflects very serious limitations resulting from an individual's impairment(s) and is expected to be relatively rare." SSR 96-9P, 1996 WL 374185 at *3 (July 2, 2009). Sedentary work "represents a significantly restricted range of work" and reflects a finding that a claimant's medical impairments have resulted in "very serious functional limitations." *Id.*

Plaintiff challenges the testimony of the vocational expert and argues that the ALJ failed to resolve apparent conflicts between the DOT and the vocational expert's testimony. Further, Plaintiff argues that the ALJ failed to elicit from the vocational expert a "reasonable explanation" for apparent unresolved conflicts, as required by SSR 00-4p, 2000 WL 1898704 at *4 (December 4, 2000).

The Fourth Circuit, in *Pearson v. Colvin*, has made it clear that an ALJ has the duty to identify apparent conflicts between a vocational expert's testimony and the DOT and to elicit a reasonable explanation from the vocational expert to resolve any conflict. Without such an explanation in the record, "the expert's testimony cannot provide substantial evidence to support the ALJ's decision." 810 F.3d at 209. As the *Pearson* Court explained, the independent duty of the ALJ to identify and resolve apparent conflicts between the testimony of the vocational expert and the DOT is required because "[t]he Social Security Act is remedial in nature" and "unusually

protective" of claimants. *Id*. at 210. Based upon these standards, the Court addresses below each of the three jobs the vocational expert identified that Plaintiff could perform with his very restricted RFC.

      A.     <u>Ticket Counter, also know as Ticket Checker</u> (DOT No. 219-587-010):

Plaintiff argues that the limitation of his RFC to "simple, routine tasks" is inconsistent with General Educational Development (GED) reasoning level of 3 required for the Ticket Counter job. (Dkt. No. 8-2 at 21). Two circuits which have published opinions on this issue have held that there is an apparent conflict between a limitation to "simple, routine tasks" and a GED of Level 3. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). The Fourth Circuit reached the same conclusion in an unpublished opinion. *Keller v. Berrryhill*, 754 Fed. Appx. 193, 197 (4th Cir. 2018); *see also*, *Smith v. Berryhill*, 2019 WL 5783529 at *2 (M.D.N.C. 2019) (collecting cases showing that "courts in this circuit have consistently held that Reasoning Level 3 jobs conflict with a limitation to 'simple, routine, repetitive tasks.'").

The Court, following the strong precedent on this issue set forth above, finds that there is an apparent conflict between the Ticket Counter position and the limitation of Plaintiff's RFC to "simple, routine tasks" and that the ALJ failed to identify and obtain a reasonable explanation to resolve the apparent conflict. Consequently, the Court finds that the Commissioner has failed to carry his burden of demonstrating that the Ticket Counter job meets the requirements for an available job position Plaintiff could perform with his RFC.[1]

---

[1] The Court further notes that the DOT position identified by the vocational expert (DOT No. 219.587-010) is titled "Parimutuel-Ticket Checker" and its job duties are described as "[c]ounts and records number of parimutuel tickets cashed at race track to verify records of

      B.     <u>Electronics Inspector</u> (DOT No. 726.684.110):

Plaintiff argues that the job requirements for this position are inconsistent with a limitation in his RFC that he "cannot perform work requiring a specific production rate (such as team-dependent assembly line work)." (Dkt. No. 8-2 at 21). A review of this specific position reveals a number of significant deficiencies in the vocational expert's testimony and the ALJ decision recognizing this job as consistent with Plaintiff's RFC. First, the specific job identified by the vocational expert, Electronics Inspector, has a different DOT number (DOT No. 726.381-010) and has a GED reasoning level of 4. This position is plainly in conflict with Plaintiff's RFC.

Second, the actual position associated with the DOT number is Touch-Up Screener, Printed Circuit Board Assembly. Plaintiff asserts that this position is inconsistent with a RFC which prohibits "a specific production rate." (Dkt. No. 8-2 at 21). The vocational expert testified that the DOT does not address "production pace," but recognized an apparent conflict between the Touch-Up Screener position and the limitation in Plaintiff's RFC to no specific production rate. The vocational expert testified that the Touch-Up Screener position was compatible with Plaintiff's RFC based upon her "education, training and stuff like that from experience and knowledge of the jobs." (Dkt. No. 8-2 at 65). No other evidence was offered by the vocational expert to support her opinion that the limitation in the RFC was not inconsistent with the job duties of a Touch-Up Screener.

---

cashiers." Parimutuel betting is unlawful in South Carolina and all states bordering on South Carolina. Consequently, the position of Parimutuel-Ticket Checker is not available to Plaintiff since the conducting of such activities would constitute a criminal act in South Carolina and all border states. This raises another legitimate question concerning whether the position of Parimutuel-Ticket Checker is reasonably available in significant numbers to Plaintiff.

The Court notes that the Touch-Up Screener position is one of dozens of jobs listed in the DOT area 726 for "occupations in assembly and repair of electronic components and accessories." Despite the role the Touch-Up Screener plays as part of an assembly and repair process, the vocational expert provided no supporting information that such a job does not require some level of production. Indeed, it appears unlikely (if not implausible) that a worker could perform such a job without some production requirement and simply produce the work at his or her own leisure.

This issue was addressed by the Court in *Davis v. Commissioner of Social Security*, 2021 WL 6053925 at *10 (N.D. Ohio 2021), *adopted* 2021 WL 6051815 (N.D. Ohio 2021), which involved a discussion of the Touch-Up Screener and other positions and the need to address whether these positions were compatible with a RFC that contained a no production requirement. The Court noted that the vocational expert did not address whether the claimant could perform the job with a RFC limited to a no production requirement. The Court observed that "it could be that those jobs do not have pace and production requirements, but I cannot make that determination from a review of the DOT. . . Without an explanation of why the ALJ did not find speed- and pace-based limitations to be necessary, the ALJ failed to build . . . an accurate and logical bridge between the evidence and the result. A remand is thus required for the ALJ to address Davis' ability to work at a fast pace or meet strict production quotas." *Id*. at *10. Like *Davis*, this Court finds that the record is clearly inadequate to support a finding that the Touch-Up Screener job has no production requirements, making remand on this issue necessary.

Third, there is an inadequate record to support the vocational expert's testimony that the Touch-Up Screener position has 75,000 jobs nationally. This number was relied upon by the

Commissioner in making the argument that even if a number of the Touch-Up Screener positions did have a production requirement, certainly with such a large number of such positions in the national economy there would be enough positions without production requirements to satisfy the requirement that there be a significant number of jobs in the national economy that the claimant could perform. (Dkt. No 24 at 4).

It is important to understand that the DOT does not provide data on the number of jobs available in the national economy, and vocational experts must extrapolate this information from the Bureau of Labor Statistics. The Court in *Pronti v. Barnhart* reversed the Commissioner's decision and remanded the matter to the agency because the vocational expert's testimony about the methodology used to calculate the number of jobs available in a particular job category was "confusing and ambiguous." 339 F.Supp 2d 480, 491 (W.D.N.Y. 2004). Other courts, while recognizing that the vocational expert's obligation to explain the methodology utilized is not particularly burdensome, have expressed concerns about "dubious methodology used to arrive at the number of jobs in the economy" by vocational experts. *See Pamela M.H. v. Commissioner of Social Security*, 2024 WL 1468906, at *5 (N.D. N.Y. 2024), *adopted* 2024 WL 1131043 (N.D.N.Y. 2024).

The vocational expert in this matter provided no information regarding how she calculated the 75,000 number for available Touch-Up Screen positions. (Dkt. No. 8-2 at 64). This number, however, is significantly higher than the recent testimony offered by some other vocational experts for the number of available Touch-Up Screener positions available in the national economy. *See Beyes v. Kijakazi,* 2023 WL 1765185, at *3 (E.D. Mo. 2023) (5,000 positions); *S.P. v. Commissioner of Social Security*, 2022 WL 3500406, at *5 (D.N.J. 2022)

(9,500 positions); *Black v. Kijakazi*, 2022 WL 2977340, at *2 (W.D.N.C. 2022) (8,000-10,000 positions); *Trexter L. v. Kijakazi*, 2021 WL 6061667, at *10 (D.S.C. 2021) (12,000 positions). The wide discrepancy in the testimony of vocational experts regarding the number of Touch-Up Screener jobs available in the national economy and the absence of any explanation in the record by the vocational expert as to how she calculated the 75,000 number justifies a remand to provide an adequate record upon which the Court can determine if there is substantial evidence to support the ALJ's finding of a significant number of Touch-Up Screener jobs in the national economy that Plaintiff could perform with his highly restricted RFC.

Under the Sequential Process, the claimant carries the burden of proving Steps One through Four. At Step Five the burden shifts to the Commissioner. This burden cannot be satisfied by a vocational expert who simply makes a declaratory statement that there is no conflict between a particular job and a claimant's RFC when it is obvious that an apparent conflict exists. As the United States Supreme Court observed in *General Electric Company v. Joiner*, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." 522 U.S. 136, 146 (1997).

Remand is necessary for the ALJ to elicit from the vocational expert specific evidence regarding whether none, some or all of the Touch-Up Screener positions carry a production requirement. Further, to the extent some portion of the positions do have a production requirement, the vocational expert must offer testimony concerning the extent to which this erodes the number of positions actually available to the Plaintiff with his limited RFC. The ALJ must additionally elicit from the vocational expert the methodology utilized to calculate the

number of available Touch-Up screener positions which are actually available to a claimant with Plaintiff's RFC. If the vocational expert cannot provide such evidence to support her opinion, the Commissioner would be unable to carry his burden under Step Five.

      C.      <u>Final Assembler (optical goods)</u> (DOT No. 713.687-018):

The third job the vocational expert identified that Plaintiff could perform was Final Assembler. The DOT describes this job as an assembler of optical goods and involves such tasks as "[a]ttaches nose pads and temple pieces to optical frames, using handtools . . ." The vocational expert testified that there are 21,000 Final Assembler positions in the national economy. (Dkt. No. 8-2 at 64).

The vocational expert's testimony regarding the Final Assembler position has some of the same deficiencies that were identified with the Touch-Up Screener position. The Court in *Dunn v. Berryhill* found that since the Final Assembler position is "part of the production process of eye glasses and sunglasses," it raises "the question of whether it must be performed at a production rate." 2018 WL 3383421 at *4 (M.D.N.C. 2018). Thus, remand was required to obtain sufficient record evidence to allow for adequate judicial review. A vocational expert in another case found that the production requirements for the Final Assembler position would reduce the number of available jobs by 50%. *Camarillo v. Berryhill*, 2018 WL 1477152, at *9 (N.D. Tex. 2018).

Additionally, there is a substantial question concerning the methodology utilized by the vocational expert in determining that there are 21,000 Final Assembler positions in the national economy. The Court noted in *Dunn* that the vocational expert testified that there were only 7,000 Final Assembler positions in the national economy, and it was unclear whether that was a total

-11-

number or the number of positions in which there was no production requirement. 2018 WL 3383421 at *4.

In sum, the Court finds that the vocational expert's testimony regarding whether the Final Assembler job duties are compatible with Plaintiff's RFC and the methodology utilized to calculate the number of available positions Plaintiff could perform is so truncated and unsubstantiated that reasonable appellate review is not possible, requiring reversal and remand.

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed pursuant to Sentence Four of 42 U.S.C. § 405(g) and the matter is remanded to the agency for further proceedings consistent with this order.[2]

**AND IT IS SO ORDERED**.

s/Richard M. Gergel
Richard Mark Gergel
United States District Judge

August 12, 2024
Charleston, South Carolina

---

[2] Plaintiff further objects to the ALJ's treatment of Plaintiff's testimony regarding his ability to perform activities for daily living (ADLs) and argues that the ALJ failed to account for countervailing evidence regarding the nature and extent of Plaintiff's ability to perform his ADLs, as required by the Fourth Circuit's decision in *Arakas v. Commissioner*, 983 F.3d 83, 99 (4th Cir. 2020). (Dkt. No. 9 at 19-26). The Court finds it unnecessary to reach this issue in light of the Court's decision to reverse and remand the ALJ's decision due to deficiencies in the Step Five record and analysis. On remand, the ALJ should consider the full record regarding Plaintiff's capacity to perform his ADLs and to reconcile any conflicting evidence regarding Plaintiff's capacity to sustain full time work, as required under *Arakas*.